**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: | : | |
| | : | Chapter 13 |
| STEVEN ROSENBLUM, | : | |
| | : | Bankruptcy No. 14-19756-AMC |
| DEBTOR | : | |
| _____ | : | |
| | : | |
| RYAN KERWIN D/B/A XTREME | : | |
| CAGED COMBAT, | : | |
| | : | |
| PLAINTIFF | : | |
| | : | Adv. No. 19-00241-AMC |
| V. | : | |
| | : | |
| STEVEN ROSENBLUM, | : | |
| | : | |
| DEFENDANT | : | |
| _____ | : | |

**MEMORANDUM OPINION**

Ashely M. Chan, United States Bankruptcy Judge

## I.    INTRODUCTION

On December 11, 2014, Steven Rosenblum ("Debtor") filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code ("Petition Date"). Thereafter, *pro se* creditor, Ryan Kerwin ("Kerwin"), filed countless motions and an adversary complaint seeking various forms of relief. This matter arises from Kerwin's latest motion in the above captioned adversary proceeding, titled "Creditor's Motion for Judge Ashley Chan to be Recused/Disqualified Pursuant to 28 U.S. Code 144" ("Recusal Motion"). *Ryan Kerwin & Xtreme Caged Combat v. Rosenblum (In re Rosenblum)*, Case No. 14-19756 ("Bankr. Case"), Adv. No. 19-241 ("Second

Adversary"), ECF No. ("ECF") 111.[1] For the reasons described below, the Recusal Motion is

denied.

## II.    BACKGROUND

The relevant background of Kerwin's extensive litigation against the Debtor is discussed

at great length in the following orders and opinions entered in the main bankruptcy case, an

earlier adversary proceeding initiated by the Debtor, captioned *Steven Rosenblum v. Ryan*

*Kerwin, Xtreme Caged Combat, and A. Jordan Rushie, Esq.*, Bankr. Case, Adv. No. 16-124

("First Adversary") (Bankr. E.D. Pa. dismissed Sept. 14, 2021), and the Second Adversary,

seeking a determination of nondischargeability of Kerwin's claim pursuant to 11 U.S.C.

§523(a)(6), each of which is hereby incorporated by reference:

1. opinion entered February 29, 2016, *In re Rosenblum,* 545 B.R. 846 (Bankr. E.D. Pa. 2016), Bankr. Case, ECF 120 (granting derivative standing to Kerwin to pursue a state court action to avoid alleged fraudulent transfers under 11 U.S.C. § 544(b) and Pennsylvania's Uniform Fraudulent Transfer Act ("PUFTA") on behalf of the Debtor's bankruptcy estate);
2. order entered June 8, 2016, First Adv., ECF 15 (denying Debtor's "Motion Seeking Damages for Willful Violation of the Automatic Stay under 11 U.S.C. § 362");
3. order and memorandum opinion entered September 11, 2019, Bankr. Case, ECF 93 (granting Kerwin's "Motion for Extension of Time to File Adversary Complaint");
4. memorandum opinion and order entered October 1, 2020, *Kerwin v. Rosenblum (In re Rosenblum)*, 2020 Bankr. LEXIS 2758, Bankr. Case, Second Adv., (Bankr. E.D. Pa. Oct. 1, 2020), Second Adv., ECF 38, 39 (denying Kerwin's "Motion to Reinstate Motion to Alter or Amend Confirmation Order and Motion to Alter or Amend Orders of March 17, 2020");
5. memorandum opinion and order entered October 1, 2020, *In re Rosenblum*, 2020 Bankr. LEXIS 2757, (Bankr. E.D. Pa. Oct. 1, 2020), Bankr. Case, ECF 383, 384 (denying Kerwin's "Motion for Sanctions and Contempt Against Debtor for Testifying to Committing Perjury and Bankruptcy Fraud" and refusing his request to vacate the confirmation order);
6. order entered September 15, 2021, Second Adv., ECF 68 (denying Kerwin's Motions for Summary Judgment and for "the Court to Rule on Creditor's Fraudulent Transfer Claim Against Allan Rosenblum/Quick Fit USA And on the Status of the Debtor's Automatic Stay");

---

[1] Even though the caption of the Second Adversary includes reference to the corporate entity named "Xtreme Caged Combat," the sole plaintiff in this matter is Ryan Kerwin in his individual capacity.

7.  order entered January 26, 2022, Second Adv., ECF 109 (disposing of six motions filed in response to the September 15, 2021 order).

For the sake of conciseness, the Court will only describe the facts that are relevant to the disposition of the Recusal Motion, and all shorthand terms not otherwise defined have the same meaning as set forth in the orders and opinions listed above.

On December 3, 2019, the Court conducted a hearing ("December 2019 Hearing") on the Debtor's Motion to Reinstate the Main Bankruptcy Case ("Debtor's Motion to Reinstate") and on confirmation of the Debtor's chapter 13 plan of reorganization ("Plan"). Tr. Dec. 2019 Hrg., Bankr. Case, ECF 302 at 4:1-4. Notably absent from the December 2019 Hearing was Kerwin who, at the time, had regularly appeared at most, if not all, other hearings in this case. *See generally id.* at 1-8. The following day, on December 4, 2019, the Court entered an order removing the bankruptcy case from abeyance ("December Reinstatement") and confirming the Debtor's Plan ("Confirmation Order"). Bankr. Case, ECF 257, 262. The Confirmation Order included standard language that read, "the plan has been proposed in good faith." Bankr. Case, ECF 262.

On December 10, 2019, Kerwin filed a notice of appeal of the Confirmation Order to the District Court for the Eastern District of Pennsylvania ("District Court"). Bankr. Case, ECF 272. Also on December 10, 2019, Kerwin initiated the Second Adversary, alleging, *inter alia*, that the pre-petition judgment he obtained against the Debtor for trademark infringement ("Trademark Infringement Judgment") is nondischargeable under 11 U.S.C. § 523(a)(6) ("Dischargeability Claim"). Second Adv., ECF 1 at 19-20.

The removal of the bankruptcy case from abeyance was short lived because, at a hearing on January 28, 2020 ("January 2020 Hearing"), the Court vacated the December Reinstatement after learning (1) that Kerwin for whatever reason had not received notice of the December 2019

Hearing and (2) of Kerwin's appeal to the Pennsylvania Superior Court ("Superior Court") of the State Litigation judgment entered in favor of Michelle Zarro, the Debtor's sister-in-law, and Allan Rosenblum, the Debtor's father, thereby placing the bankruptcy case into abeyance once more pending conclusion of the State Litigation. Bankr. Case, ECF 318. At the same hearing, the Court also granted in part the Debtor's motion to dismiss the Second Adversary, leaving Kerwin's Dischargeability Claim as the only count in the adversary complaint remaining for disposition. Second Adv., ECF 14.

Importantly, the Court explained at the January 2020 Hearing that (1) the Plan provided a pro rata distribution to Kerwin on his unsecured proof of claim and that his acceptance of distributions made pursuant to the Plan had no effect on any rights that he had with respect to pursuing his Dischargeability Claim, and (2) if Kerwin intended to receive any distributions while his Dischargeability Claim was pending, he would need to withdraw his appeal of the Confirmation Order to permit the Plan distributions directed toward him to commence. Audio R. of Jan. 28, 2020, Hrg., Bankr. Case, at 11:35:07 – 12:00:02. The Court further explained that the good faith language in the Confirmation Order had no effect on any rights that Kerwin had with respect to pursuing either his Dischargeability Claim or his motion to dismiss the Debtor's bankruptcy case ("Dismissal Motion"). *Id.* at 12:00:02 – 12:01:12. Thereafter, on February 18, 2020, the Court entered an amended order modifying the language of the Confirmation Order to that effect ("Amended Order"), which read, "the [Confirmation] Order has no bearing on this Court's future resolution of whether the Debtor filed this case in good faith, the issues raised in…Kerwin's Motion to Dismiss or any of the claims raised by Mr. Kerwin's adversary proceeding against the Debtor." Am. Order, Bankr. Case, at ECF 333. *See also* Tr. Feb. 18, 2020 Status Hrg., Bankr. Case, ECF 369 at 2-9; 11-5; 19:16-7 (again explaining to Kerwin the effect

of the Confirmation Order and further describing the purpose and details of the Amended Order).

On March 2, 2020, Kerwin filed a praecipe to withdraw his appeal of the Court's Confirmation

Order. *In re Steven Rosenbulm*, Case No. 19-5832- NIQA (E.D. Pa. dismissed March 2, 2020),

ECF 9.

On May 11, 2021, the Court held a status conference where it learned that Kerwin's

petition to the Pennsylvania Supreme Court for allowance of appeal of the Superior Court's order

affirming the judgment against Allan Rosenblum in the State Litigation had been dismissed.

*Xtreme Caged Combat v. Zarro*, 247 A.3d 42, 52 (Pa. Super. Ct. 2021) *appeal denied* by 260

A.3d 924 (Pa. 2021). Nonetheless, the State Litigation remained pending with respect to Zarro

because the Superior Court had ordered a new trial on Kerwin's PUFTA claim against her, after

determining that the Bucks County Court of Common Pleas ("State Trial Court") had erred in

granting a nonsuit with respect to Zarro. *Id.* at 49-50. Audio Rec. Status Hrg. held May 11, 2021,

Bankr. Case, at 10:30:27 – 10:31:37.

Meanwhile, in the Second Adversary, on September 15, 2021, the Court entered an order

denying (1) a motion for summary judgment ("Summary Judgment Motion") which Kerwin had

filed appearing to seek to have the Court rule that Debtor had fraudulently transferred the

Levittown Gym to Allan Rosenblum and Quick Fit, and (2) a motion filed by Kerwin

concurrently with the Summary Judgment Motion for "the Court to Rule on Creditor's

Fraudulent Transfer Claim Against Allan Rosenblum/Quick Fit USA And on the Status of the

Debtor's Automatic Stay" ("Fraudulent Transfer Motion"), similarly appearing to seek a

determination that Debtor had made a fraudulent transfer to Allan Rosenblum and/or Quick Fit.

Second Adv., ECF 68. In support of its decision denying the Summary Judgment Motion, the

Court noted that (1) the only remaining claim in the Second Adversary was the Dischargeability

Claim based upon the Trademark Infringement Judgment; (2) the Superior Court had already affirmed the State Trial Court's determination that Kerwin introduced no evidence at trial sufficient to show that the Debtor transferred any property to [non-debtor] defendant Allan Rosenblum; (3) the Pennsylvania Supreme Court denied Kerwin's petition for allowance of an appeal of that determination; and (4) collateral estoppel prevents this Court from granting such motion with respect to Allan Rosenblum. *Id.* at ¶¶ 14-16.

With respect to its decision denying the Fraudulent Transfer Motion, the Court noted that neither party named in the Fraudulent Transfer Motion was a party to the Second Adversary, and that (1) "the *Rooker Feldman* doctrine and/or collateral estoppel bar this Court from reconsidering the determinations of the State Trial Court and Superior Court that Kerwin did not introduce sufficient evidence to prove the Debtor fraudulently transferred any property to Allan Rosenblum under PUFTA[,]"; (2) the fraudulent transfer claims themselves were "simply irrelevant to the only remaining count in [the Second Adversary]"; and (3) "even if the automatic stay [was] not in place, . . . Kerwin [did] not [seek] or obtain derivative standing to pursue a fraudulent transfer claim against Quick-Fit[,] LLC ('Quick Fit'), a corporation owned, at least at some point by the Debtor and Allan Rosenblum…" *Id.* at ¶¶ 17-18.

On January 26, 2022, the Court entered an order disposing of six (6) motions filed by Kerwin ("January 2022 Order") in the Second Adversary ("Six Motions," collectively with the Summary Judgment Motion and Fraudulent Transfer Motion, the "Motions") in response to the Court's denial of the Summary Judgment Motion and Fraudulent Transfer Motion, each of which could properly be described as containing perplexing arguments and wholly distortive facts. *See* Second Adv., ECF 71, 73, 75, 77, 79, 81, 109. The January 2022 Order disposing of the Six Motions is incorporated herein by reference, and disposed of the Six Motions as follows:

- Sanctions Motion, discussed at ¶¶ 1-13, DENIED;
- Certification Motion, discussed at ¶¶ 14-17, DENIED;
- Clarification Motion,[2] discussed at ¶¶ 18-37, GRANTED to the extent the status of the automatic stay was clarified;
- Derivative Standing Motion discussed at ¶¶ 38-40, GRANTED in part, DENIED in part;
- Reconsideration Motion discussed at ¶¶ 41-51, DENIED; and
- Motion to Amend discussed at ¶¶ 52-55, DENIED.

Second Adv., ECF 109. On February 18, 2022, Kerwin filed the instant Recusal Motion,

apparently taking issue with the Court's depiction of events in its orders disposing of the

Motions, the disposition of the Motions, and the effect of some, if not all, of the orders and

opinions listed above. *See supra* at 2.

## III.    DISCUSSION

The Recusal Motion is incredibly confusing and difficult to follow. While the Recusal

Motion references 28 U.S.C. § 144, this provision, by its terms, as many courts have recognized,

only applies to district court judges, not bankruptcy judges.[3] *See e.g., In re Horton*, 621 F.2d

968, 970 (9th Cir. 1980); *Barna v. Haas (In re Haas)*, 292 B.R. 167, 175 (Bankr. S.D. Ohio

2003); *In re Celotex Corp.*, 137 B.R. 868, 874 (Bankr. M.D. Fla. 1992). *See also Lawee Dev.*

*Corp. v. Boswell (In re Boswell)*, Case No.: 2:13-bk-22391-WB, Adv No: 2:13-ap-01790-WB,

---

[2] As noted in the January 2022 Order, the request for relief in the Clarification Motion was such that the Court construed that motion as one brought under 11 U.S.C. § 362(j). *Second Adv.*, ECF 109 ¶ 19.
[3] 28 U.S.C. § 144 provides:

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.
>
> The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term [session] at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

2014 Bankr. LEXIS 2645, at *2 n.2 (Bankr. C.D. Cal. June 16, 2014). Nevertheless, because

Kerwin is proceeding *pro se*, the Court will liberally construe his Recusal Motion as being

brought pursuant to 28 U.S.C. § 455, which governs disqualification of bankruptcy judges. *See*

Fed. R. Bankr. P. 5004(a).

Kerwin also struggles to clearly identify the relevant facts upon which the Recusal

Motion is based. That said, the Court has attempted to discern the nature of his complaints and,

based upon the Court's review of exhibits attached to the Recusal Motion and its own review of

the docket in the main bankruptcy case and two adversary proceedings, the Court construes the

Recusal Motion as suggesting the Court is biased against Kerwin or the Court's impartiality may

reasonably be questioned based upon: (1) the Court allegedly improperly ordering Kerwin, under

threat of sanctions and contempt, to withdraw Quick Fit as a defendant in the State Litigation; (2)

the Court supposedly failing to notify Kerwin of the deadline for objecting to discharge pursuant

to 11 U.S.C. § 1328(h); (3) the Court confirming the Debtor's Plan without notifying Kerwin or

hearing his objections to confirmation; (4) the Court allegedly coercing Kerwin into abandoning

his Dismissal Motion; (5) the Court allegedly coercing Kerwin into abandoning his appeal of the

Confirmation Order; and (6) the Court allegedly lying to Kerwin and/or retaliating against him

with respect to an unidentified number of the Court's previous rulings.

For the reasons stated below, the Court concludes that no objectively reasonable person

informed of the actual facts and circumstances would question the Court's impartiality with

respect to Kerwin. Furthermore, the circumstances do not suggest, let alone prove by compelling

evidence, that the Court has an actual personal bias or prejudice of any sort against Kerwin.

Accordingly, finding no basis supporting recusal, the Court will deny the Recusal Motion.

### A. 28 U.S.C. § 455

The Federal Rules of Bankruptcy Procedure provide that "[a] bankruptcy judge shall be governed by 28 U.S.C. § 455, and disqualified from presiding over the proceeding or contested matter in which the disqualifying circumstances [sic] arises or, if appropriate, shall be disqualified from presiding over the case." Fed. R. Bankr. P. 5004(a). Pursuant to 28 U.S.C. § 455(a), "any… judge…of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." Under this provision, the appearance of bias or prejudice, rather than actual bias or prejudice, must be demonstrated. *Dean v. Philadelphia Gas Works*, Civ. No. 19-04266, Civ. No. 19-04275, Civ. No. 19-04279, Civ. No. 19-04428, Civ. No. 19-04429, 2020 WL 7695751, at *6 (E.D. Pa. Dec. 28, 2020); *Holt v. Pennsylvania*, Civ. No. 10-5510, 2020 WL 264666, at *4 (E.D. Pa. Jan. 17, 2020); *Murphy v. U.S. Dep't of Educ. (In re Murphy)*, 547 B.R. 875, 878 (Bankr. W.D. Pa. 2016). To determine whether recusal is warranted under 28 U.S.C. § 455(a), the Court must consider whether an objective, reasonable layperson knowing all the facts and circumstances would conclude the judge's impartiality might reasonably be questioned. *Allen v. Parkland School Dist.*, 230 Fed. Appx. 189, 193 (3d Cir. 2007); *In re Kensington Int'l. Ltd.*, 368 F.3d 289, 303 (3d Cir. 2004); *Dean*, 2020 WL 7695751, at *6; *In re Reese*, 482 B.R. 530, 534 (Bankr. E.D. Pa. 2012). A judge need not recuse herself based on the subjective view of the moving party no matter how strongly the view is held. *In re Reese*, 482 B.R. at 534 (citing *United States v. Sammons*, 918 F.2d 592, 599 (6th Cir.1990)).

In general, a judge's opinion formed about a litigant, even if the judge has become "exceedingly ill disposed toward that litigant," is not a basis for disqualification under § 455(a) when the "knowledge and the opinion it produced were properly and necessarily acquired in the

course of the proceedings." *Liteky v. United States*, 510 U.S. 540, 550-51 (1994). Furthermore,

as the Supreme Court in *Liteky* explained:

> judicial rulings alone almost never constitute a valid basis for a
> bias or partiality motion. In and of themselves (i.e., apart from
> surrounding comments or accompanying opinion), they cannot
> possibly show reliance upon an extrajudicial source; and can only
> in the rarest circumstances evidence the degree of favoritism or
> antagonism required…when no extrajudicial source is involved.
> Almost invariably, they are proper grounds for appeal, not recusal.
> Second, opinions formed by the judge on the basis of facts
> introduced or events occurring in the course of the current
> proceedings, or of prior proceedings, do not constitute a basis for a
> bias or partiality motion unless they display a deep-seated
> favoritism or antagonism that would make fair judgment
> impossible. Thus, judicial remarks during the course of a trial that
> are critical or disapproving of, or even hostile to, counsel, the
> parties, or their cases, ordinarily do not support a bias or partiality
> challenge. They *may* do so if they reveal an opinion that derives
> from an extrajudicial source; and they *will* do so if they reveal such
> a high degree of favoritism or antagonism as to make fair judgment
> impossible. An example of the latter (and perhaps of the former as
> well) is the statement that was alleged to have been made by the
> District Judge in *Berger v. United States*, 255 U.S. 22, 65 L. Ed.
> 481, 41 S.Ct. 230 (1921), a World War I espionage case against
> German–American defendants: 'One must have a very judicial
> mind, indeed, not [to be] prejudiced against the German
> Americans' because their 'hearts are reeking with disloyalty.' *Id.*,
> at 28 (internal quotation marks omitted). *Not* establishing bias or
> partiality, however, are expressions of impatience, dissatisfaction,
> annoyance, and even anger, that are within the bounds of what
> imperfect men and women, even after having been confirmed as
> federal judges, sometimes display. A judge's ordinary efforts at
> courtroom administration—even a stern and short-tempered
> judge's ordinary efforts at courtroom administration—remain
> immune.

*Liteky,* 510 U.S. at 555-56.

Ultimately, just as a judge must recuse herself if her impartiality might reasonably be

questioned, she also has a duty not to recuse herself if there are no grounds for disqualification.

*Dean,* 2020 WL 7695751, at *6 ("In the absence of proof that a person would reasonably

question the judge's impartiality, a judge 'has an affirmative duty not to recuse himself.'"); *In re Reese,* 482 B.R. at 534.

Any judge of the United States "shall also disqualify himself in the following circumstances: (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." 28 U.S.C. § 455(b)(1). With respect to this provision, "courts have held that the litigant must prove 'actual bias or prejudice' 'by compelling evidence,' *Hook v. McDade,* 89 F.3d 350, 355 (7th Cir. 1996), and that the evidence of a 'negative bias or prejudice . . . must be grounded in some personal animus or malice that the judge harbors against [him/her].'" *Holt,* 2020 WL 264666, at *3. "[P]ersonal bias or prejudice . . . connot[es] a favorable or unfavorable disposition or opinion [towards an individual or his/her case] that is somehow *wrongful or inappropriate,* either because it is undeserved, or because it rests upon knowledge that the subject ought not to possess . . ., or because it is excessive in degree[.]" *Id.* (quoting *Liteky,* 510 U.S. at 550). Ultimately, courts must determine whether an informed, objective, reasonable observer would be convinced of the judge's bias. *Id.*

**B.    Recusal Is Not Justified Under 28 U.S.C. § 455 Because an Objectively Reasonable Person Informed of the Facts and Circumstances Would Not Question the Court's Impartiality Based on the Complaints Raised in the Recusal Motion and Because the Circumstances Do Not Otherwise Reflect the Court Holds Any Bias or Prejudice Against Kerwin.**

The circumstances surrounding the complaints raised in the Recusal Motion would not cause an objectively reasonable observer to question the Court's impartiality or convince an objectively reasonable observer that the Court holds any bias or prejudice against Kerwin. With respect to Kerwin's first complaint - that the Court improperly ordered him, under threat of sanctions and contempt, to withdraw Quick Fit as a defendant in the State Litigation - the record

is devoid of any threats of sanctions or contempt by the Court aimed at forcing Kerwin to withdraw Quick Fit as a defendant from the State Litigation. *See* Second Adv., ECF 109 at n.4.

By way of further explanation, in the Recusal Motion, Kerwin alleges without reference to any record citation that, at the conclusion of a hearing held on June 7, 2016 in the First Adversary ("June 2016 Hearing"), he and A. Jordan Rushie, Esq., an attorney who at one time represented Xtreme Caged Combat, but whose involvement has since ceased in this case, specifically asked the undersigned if they were being ordered to remove Quick Fit from the State Litigation, and that the undersigned responded in the affirmative. Ex. A, Recusal Mot., Second Adv., ECF 111-1 at 3.[4] This simply is not accurate and nothing in the record of the bankruptcy case or the adversary proceedings reflects that this Court ever ordered Quick Fit to be prevented from being added, or removed for that matter, from the State Litigation, as explained in detail in the January 2022 Order. *See* First Adv., ECF 15 (ordering only the pleadings seeking to add the Debtor be withdrawn, "so that the *Debtor* will not be a party to the State Litigation"); Second Adv., ECF 68 ¶¶ 17-18, n.2 (noting Quick Fit is not a party to the Second Adversary); Second Adv., ECF 109 ¶¶ 5-13, 18-37 (discussing Quick Fit and the automatic stay).

The Court was explicit at the June 2016 Hearing that the automatic stay applies with respect to the Debtor, and explained to Kerwin "you violated the stay by adding the **debtor** as a party, . . . [the Court needs] you to just withdraw that . . . motion to amend the complaint to add [the Debtor] [referring to a motion Kerwin had filed in the State Litigation attempting to add Debtor as a defendant]…" Tr. Hrg. June 7, 2016, First Adv., ECF 17 at 19:4-8 (emphasis added). The Court was clear in its comments at the June 2016 Hearing that the automatic stay under 11 U.S.C. § 362 applied with respect to the Debtor. In fact, it was not called upon in connection

---

[4] Exhibit A consists of two separately paginated documents, each beginning with page number 1. As a result, the Court's citation references the pagination found in the ECF header to Exhibit A, which numbers the pages 1-6.

with the June 2016 Hearing to opine with respect to any other entities in which the Debtor might have an interest. In connection with the First Adversary Proceeding, Kerwin was only ordered on June 8, 2016 ("June 2016 Order") to withdraw any filings in the State Litigation which attempted to add *Debtor* as a defendant. *Id.* at 4-5, 18:4-20, 19:4-8; Second Adv., ECF 109 ¶¶ 18-38. That Kerwin might have misunderstood any of the Court's orders, opinions, or comments on the record, only speaks to the risks he took by proceeding *pro se* and ignoring this Court's many attempts at urging him to obtain competent counsel.[5] *See* First Adv., ECF 17 at 28:2-11; Second Adv., ECF 38 n.1, ECF 109 n.5.

Based on the foregoing, Kerwin's perception that the Court exhibited bias against him by improperly pressuring him to withdraw Quick Fit as a defendant from the State Litigation under threat of sanctions is unfounded and no objectively reasonable person would construe anything the Court has said or done as pressuring Kerwin to take any particular action in the State Litigation with respect to any non-debtor parties.

With respect to Kerwin's complaint that the Court failed to notify Kerwin of the deadline for objecting to discharge pursuant to 11 U.S.C. § 1328(h), to the contrary, the Court not only served Kerwin a copy of the "Notice of Deadlines" by first class mail, through the Bankruptcy Noticing Center, on April 18, 2021, but the Court also went so far as to specifically exempt Kerwin from the deadlines set forth therein by order dated April 26, 2021. Bankr. Case, ECF 397. Kerwin's complaint that the Court did not notify him of the deadline for objecting to

---

[5] Moreover, following the June 2016 Hearing, the Court remained sensitive to the trouble Kerwin encountered fully complying with certain aspects of the June 2016 Order. Specifically, the State Trial Court rejected Kerwin's attempts to comply with the aspect of the June 2016 Order directing Kerwin to clarify that he had been granted derivative standing under 11 U.S.C. § 544(b) to pursue his PUFTA claims against Michelle Zarro and Allan Rosenblum on behalf of the Debtor's estate for the benefit of all creditors. First Adv., ECF 15, ECF 17 at 3-5. Despite Kerwin's inability to technically comply with every aspect of the June 2016 Order, the Court denied the Debtor's motion seeking to have Kerwin held in contempt, recognizing that he is proceeding *pro se* and did his best to comply. *See* First Adv., ECF 24.

discharge pursuant to 11 U.S.C. § 1328(h) is simply not supported by the record and therefore, cannot serve as any ground for disqualification under 28 U.S.C. § 455.

Next, Kerwin's Recusal Motion complains that the Court is biased because it confirmed the Debtor's Plan without notifying Kerwin or hearing his objections to confirmation. At the time the Court initially confirmed the Debtor's Plan, the Court was unaware that certain issues arose with respect to Kerwin's notice of the December 2019 Hearing. Specifically, as the Court learned later, Kerwin had not received either the notice of the Debtor's Motion to Reinstate or the continued date for the confirmation hearing on the Debtor's Plan. *See* Bankr. Case, ECF 250 (no certificate of service filed with the notice of motion); *id.*, ECF 254 (notice not mailed to Kerwin). However, once the Chapter 13 Standing Trustee ("Trustee") and the Court became aware of Kerwin's lack of notice regarding the December 2019 Hearing, Kerwin's appeal pending in the State Litigation, and his opposition to the Confirmation Order, the Court promptly vacated the December Reinstatement at the January 2020 Hearing, immediately placed the bankruptcy case back in abeyance, and attempted to tailor relief, by way of the Amended Order, such that Kerwin would be assured that his rights with respect to the Dismissal Motion and the Dischargeability Claim were adequately protected and unaffected by the Confirmation Order. *Id.*, ECF 318, 333. That Kerwin did not initially receive notice of the December 2019 Hearing does not establish any objective bias against Kerwin, particularly when the Court swiftly took corrective action to address the premature elimination of the abeyance and tailor the Confirmation Order to address Kerwin's concerns respecting confirmation. Accordingly, no objectively reasonable person informed of the circumstances would question the Court's impartiality or ascribed any bias or prejudice to it based on those circumstances.

With respect to Kerwin's fourth complaint in the Recusal Motion, that that the Court is biased against him because it coerced Kerwin into abandoning his Dismissal Motion, the Court took no such action. As explained in the January 2022 Order, *Kerwin's* 2015 request that the Court hold the Dismissal Motion in abeyance pending the conclusion of the State Litigation was granted. Second Adv., ECF 109 ¶¶ 45-7. As far as the Court is aware, the State Litigation remains pending with respect to Michelle Zarro, and Kerwin has not abandoned his Dismissal Motion in any sense. No portion of the record has been identified as even potentially suggesting either that Kerwin withdrew his Dismissal Motion or that the Court encouraged him to do so, beyond inquiring within the first year of the Petition Date whether mediation or settlement of Kerwin's issues with the Debtor would be possible. *See* Tr. Hrg. held September 15, 2015, Bankr. Case, ECF 101 at 3:16-9; *See also* Second Adv., ECF 38 at 8 (noting that Kerwin's Dismissal Motion is held in abeyance until such time as the State Litigation is fully concluded). As such, the fourth allegation of bias is unsubstantiated and cannot serve as a basis to grant the Recusal Motion.

With respect to Kerwin's fifth complaint in the Recusal Motion that the Court is biased against him because it coerced Kerwin into abandoning his appeal of the Confirmation Order, the record does not reflect that the Court coerced Kerwin to take any particular action. The Court draws attention to the January 2020 Hearing, where it simply explained that the standard good faith language in the Confirmation Order had no effect on any rights that Kerwin had with respect to his Dischargeability Claim or Dismissal Motion, and, that if Kerwin intended to receive distributions under the Plan while his Dischargeability Claim was pending, he should withdraw his appeal of the Confirmation Order to permit the Plan distributions to commence. Audio R. of Jan. 28, 2020, Hrg., Bankr. Case, at 11:35:07 a.m. to 12:01:10 p.m. These benign

comments were merely made in an effort to address some of Kerwin's concerns respecting confirmation and to help him understand the implications of the appeal on the timeline for receiving payments under the Debtor's Plan. Kerwin's concern over the withdrawal of the appeal of the Confirmation Order is particularly perplexing given that the Court entered a special Amended Order to further reassure him that confirmation would not affect the resolution of the Dismissal Motion or the Dischargeability Claim in any way. Accordingly, no objectively reasonable person would question the Court's impartiality based upon its comments respecting confirmation of the Debtor's Plan nor perceive any actual bias against Kerwin on that basis.

Lastly, the Court finds Kerwin's sixth allegation of bias, that the Court lied to Kerwin or retaliated against him with respect to unspecified previous rulings, baffling and confusing, particularly because he does not articulate how the Court has done so nor does he identify which orders he takes issue with in that regard. Upon a close review of the dockets in all three matters discussed *supra*, the Court finds no basis substantiating Kerwin's claim that the Court mischaracterized its actions in any way vaguely described by Kerwin. Accordingly, this allegation of bias is utterly groundless.

## IV.    CONCLUSION

For the foregoing reasons Kerwin's Recusal Motion is baseless and shall be DENIED. An appropriate Order follows.

_____
Honorable Ashely M. Chan
United States Bankruptcy Judge

Date: May 3, 2022